**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                *Plaintiff/Respondent,*


   vs.                                      Case No. 18-10061-EFM

ALFREDO NINO-CRUZ,

                *Defendant/Petitioner.*

## MEMORANDUM AND ORDER

      Alfredo Nino-Cruz pleaded guilty to two counts of aggravated identity theft, for which this Court sentenced him to a prison term of 48 months. This matter comes before the Court on Nino-Cruz's Motion collaterally attacking that sentence. For the reasons explained below, Nino-Cruz's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 31) is denied. Because review of Nino-Cruz's Motion and the files and record of the case conclusively show that he is not entitled to relief under § 2255, the Court denies the Motion without an evidentiary hearing.

## I.      Factual and Procedural Background

      On July 17, 2018, a federal grand jury returned a superseding indictment against Alfredo Nino-Cruz. The Superseding Indictment charged Nino-Cruz with the following crimes: (Count 1) aggravated re-entry into the United States, (Counts 2, 4, and 6) bank fraud, (Counts 3, 5, and 7)

aggravated identity theft, (Count 8) possession of a firearm by a convicted felon, (Count 9) possession of ammunition by a convicted felon, and (Count 10) possession of a firearm by an illegal alien.

The Government and Nino-Cruz entered into a plea agreement. Nino-Cruz agreed to plead guilty to two counts of aggravated identity theft (Counts 3 and 5), and the Government agreed to dismiss the eight remaining counts. As a factual predicate for his guilty plea, Nino-Cruz admitted that on June 8 and August 22, 2016, he opened checking accounts in the name of Israel Delgado at Wells Fargo Bank and Intrust Bank in Wichita, Kansas. Nino-Cruz knew that Israel Delgado was a real person, and he used fraudulent identification documents to open these accounts with the intent of obtaining money from the bank. In paragraph six of the plea agreement, both parties agreed "to request two (2) consecutive sentences of two (2) years each for a controlling sentence of four (4) years."[1]

On October 9, 2018, Nino-Cruz appeared before the Court to enter his guilty plea. During this hearing, the Court confirmed with Nino-Cruz that he had discussed the plea agreement with his attorney, that his attorney answered any questions he had about the plea agreement, and that he understood the plea agreement.[2] The Court also told Nino-Cruz that by pleading to two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A, "[he] would be subject to a mandatory two-year sentence in prison on each of those counts, and those two counts would run consecutive[ly] . . . . So essentially this would call for a mandatory four-year sentence in prison."[3]

---

[1] Doc. 24, at 4.

[2] Doc. 37, at 9.

[3] Doc. 37, at 10.

Nino-Cruz stated that he understood that he would receive a mandatory four-year prison term.[4]

Later, the Court repeated that, pursuant to the plea agreement, the Government agreed to request

that the Court impose the sentence that, by law, the Court is required to give: "two years plus two

years for four years."[5]

During the October 9 hearing, the Court advised Nino-Cruz not to plead guilty if his

decision was based on promises he received other than what was discussed in the plea agreement.

And the Court and Nino-Cruz (via an interpreter) discussed this matter further:

> The Court: "Other than the promises made to you in this plea agreement which I've gone over with you, has anybody made any other promises to you to persuade you to plead guilty?"
>
> Nino-Cruz: "No."
>
> The Court: "Has anyone made any threats against you to make you enter this plea?"
>
> Nino-Cruz: "No."
>
> The Court: "Has anyone used or tried to use any physical force or violence against you to make you enter this [plea]?"
>
> Nino-Cruz: "No."

After this discussion, Nino-Cruz pleaded guilty to Counts 3 and 5. On January 3, 2019, the Court

accepted the recommendation of the parties and sentenced Nino-Cruz to 48 months in prison to be

followed by one year of supervised release.[6]

---

[4] Doc. 37, at 11.

[5] Doc. 37, at 14.

[6] At sentencing, the Government argued that—even though both parties agreed to recommend consecutive 24-month sentences—the law did not require Counts 3 and 5 to run consecutive to each other. Although the Court had previously stated that it lacked the authority to impose concurrent 24-month prison terms, the Court ultimately determined that a four-year prison sentence was appropriate in this case.

On April 24, 2019, Nino-Cruz filed a Motion under 28 U.S.C. § 2255, seeking to modify his 48-month sentence to 24 months.  The Motion, which is handwritten and at times difficult to read, raises three arguments in support of Nino-Cruz's request to modify his sentence.  First, Nino-Cruz argues that his counsel promised him at various times that he would receive a 24-month sentence.  Second, Nino-Cruz states that he wanted to file a direct appeal of his sentence but that his counsel never filed it.  Third, Nino-Cruz argues that federal agents requested that his wife testify at his sentencing; when she refused, Nino-Cruz states that these agents "beat up" his wife and deported her to Mexico.  In addition to reducing his sentence to 24 months, Nino-Cruz asks the Court to investigate the federal agents and initiate a lawsuit against them.

## II.     Legal Standard

 Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> [T]he judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . .  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[7] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[8] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[9]

## III. Analysis

### A. Ineffective Assistance of Counsel: Advising the Length of Sentence

For Nino-Cruz to successfully challenge his sentence based on a claim of ineffective assistance of counsel, he must demonstrate two things: (1) that his counsel's performance was deficient and (2) that his counsel's deficient performance prejudiced his defense.[10] Nino-Cruz asserts that his counsel promised him on multiple occasions that he would receive a total sentence of 24 months in prison. The Court is greatly skeptical that Nino-Cruz's counsel—a federal public defender who frequently appears before the Court—would make any such promise. The Court's skepticism, however, is not the reason Nino-Cruz's Motion is denied. Rather, the Court determines that even if Nino-Cruz's counsel made such an error, Nino-Cruz was not prejudiced by the mistake.

---

[7] 28 U.S.C. § 2255(b).

[8] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[9] *See id.* (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[10] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Bush v. Carpenter*, 926 F.3d 644, 681 (10th Cir. 2019) (explaining that to prevail on an ineffective assistance of counsel claim, a defendant "must show that [counsel's] deficient performance prejudiced the defense").

Before entering his plea of guilty, Nino-Cruz swore under oath that he had reviewed the plea agreement with his attorney, that his attorney answered all of his questions about the plea agreement, and that he understood the plea agreement. Pursuant to the plea agreement, Nino-Cruz agreed to jointly recommend with the Government that he receive "two (2) consecutive sentences of two (2) years each for a controlling sentence of four (4) years."

Furthermore, before accepting Nino-Cruz's guilty plea, the Court informed him multiple times that by pleading guilty to Counts 3 and 5 he would receive a prison sentence of 48 months. The Court also asked Nino-Cruz whether *anybody* had made *any promises* (other than what was contained in the plea agreement) to persuade him to plead guilty, to which Nino-Cruz stated under oath: "No." Based on the plea agreement and Nino-Cruz's statements made under oath at the October 9 hearing, it would be unfathomable for Nino-Cruz to believe that he would be sentenced to 24 months in prison. The Court therefore concludes that Nino-Cruz has failed to demonstrate that his counsel's performance (even if deficient) was prejudicial to his defense, and the Motion to modify the sentence to 24 months based on his counsel's alleged promises is denied.

**B.      Ineffective Assistance of Counsel: Failure to File Notice of Appeal**

Nino-Cruz does not list his counsel's failure to file an appeal as one of the grounds justifying his request to modify his sentence. However, in discussing why he never directly appealed any of his other claims, Nino-Cruz states that his counsel never filed an appeal despite Nino-Cruz's desire to appeal his sentence. Construing the Motion liberally, the Court will address Nino-Cruz's statement as a claim of ineffective assistance of counsel for failure to file a notice of appeal.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."[11] Conversely, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."[12] Here, Nino-Cruz states that "[his] counsel told [him] not to appeal," that his counsel never helped him appeal his case, that his counsel "never want[ed] him to appeal," and that his counsel never filed his appeal. Conspicuously absent from Nino-Cruz's Motion, however, is any claim that he expressly instructed his counsel to file an appeal. As such, the Court cannot conclude that Nino-Cruz's counsel's failure to file a notice of appeal was per se deficient legal representation.

In *Roe*, the Supreme Court addressed whether "counsel [is] deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?"[13] The Court explained that in such cases, "whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."[14] The Court reasoned that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."[15]

---

[11] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citation omitted).

[12] *Id.* (citation omitted).

[13] *Id.*

[14] *Id.* at 478.

[15] *Id.*

Even if the defendant's counsel did not consult with the defendant about an appeal, the *Roe* Court instructed courts to then consider a second question: "whether counsel's failure to consult with the defendant itself constitutes deficient performance."[16] In keeping with its *Strickland* decision, the Court declined to adopt a bright-line rule that the failure to consult with a defendant regarding a post-judgment appeal is per se unreasonable.[17] Instead, the Court held that counsel's duty to consult with a defendant about an appeal arises when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[18] To make this determination, "courts must take into account all the information counsel knew or should have known."[19]

The *Roe* Court provided the following example to illustrate when a decision not to consult a defendant about an appeal would likely be reasonable:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable."[20]

Here, Nino-Cruz indicates that he and his attorney had a conversation about appealing his sentence and that his attorney advised him against appealing. If true, then Nino-Cruz's counsel's

---

[16] *Id.*

[17] *Id.* at 479.

[18] *Id.* at 480.

[19] *Id.* (citation omitted) (applying a totality of the circumstances standard).

[20] *Id.* at 479.

performance was not deficient under *Roe*.  However, even if Nino-Cruz's attorney did *not* consult[21] with him about the possibility of appealing his sentence, the Court cannot hold that such a decision was deficient representation, even though it is certainly prudent for counsel to consult with a defendant on the possibility of appeal as a matter of course.[22]

Nino-Cruz was indicted on ten counts, and some of the counts would have carried a much harsher prison sentence than four years had Nino-Cruz been convicted of them.  By negotiating a plea agreement, Nino-Cruz's counsel obtained dismissal of eight counts and the Government's agreement to recommend a four-year sentence.  Nino-Cruz expressly agreed to this outcome.  The Court ultimately accepted the parties' joint recommendation and sentenced Nino-Cruz in accordance with the terms of the plea agreement.  At sentencing, the Court advised Nino-Cruz of his appeal rights—many of which he waived in his plea agreement.  And there are no discernible, nonfrivolous grounds for attacking Nino-Cruz's sentence on appeal.  Under these facts, the Court concludes that even if Nino-Cruz's counsel failed to consult with Nino-Cruz about an appeal, the failure to consult in this case was not objectively unreasonable.  Thus, even construing Nino-Cruz's Motion as raising a claim of ineffective assistance of counsel for failing to file a notice of appeal, the Court holds that the claim must fail.

## C.    Lawsuit Against Federal Agents

Finally, Nino-Cruz requests that the Court initiate an investigation and file a lawsuit against unidentified members of the U.S. Marshals Service and U.S. Drug Enforcement Administration

---

[21] *Id.* at 478 ("We employ the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.").

[22] *Id.* at 479 ("Because the decision to appeal rests with the defendant, we agree . . . that the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal.").

("DEA") agents. Nino-Cruz claims that Marshals and DEA agents approached his wife before Nino-Cruz's sentencing hearing and offered to give her "legal status" in the United States in exchange for testifying against Nino-Cruz at his sentencing. When Nino-Cruz's wife refused to testify at sentencing, Nino-Cruz claims that the Marshals and DEA agents "beat up" his wife and deported her to Mexico.

For a plethora of reasons, the Court is highly skeptical of the veracity of Nino-Cruz's claims. To identify just one: the Government had no obvious motivation to seek the testimony of Nino-Cruz's wife at sentencing, considering that the Government reached an agreement with Nino-Cruz to jointly recommend a sentence of four years' imprisonment. Because the Government lacked a reason to seek this testimony at sentencing, the contention that federal agents would offer Nino-Cruz's wife legal status in the United States in exchange for her testimony—or physically abuse her in response to her refusal to testify—is, to say the least, dubious.

Nevertheless, even taking Nino-Cruz's claims as true, it would not provide a reason to modify or vacate Nino-Cruz's sentence, which is the only purpose of a § 2255 motion. Nino-Cruz is free to pursue a civil action against the unidentified individuals he claims abused his wife, but a Motion under § 2255 is not the proper avenue for such a claim. The Court therefore denies the Motion.

**D.      Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the defendant. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a

constitutional right."[23]   A defendant satisfies this burden if " 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' "[24]   For the reasons explained above, Nino-Cruz has not made a substantial showing of the denial of a constitutional right.  Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** that Nino-Cruz's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 31) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of November, 2019.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[23]   28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA.  *See* 28 U.S.C. § 2253(c)(1).

[24]   *Saiz v Ortiz*, 392 F.3d 1166, 1171 n. 3 (10th Cir. 2004) (quoting *Tennard v Dretke*, 524 U.S. 274, 282 (2004)).